UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CINDY RAYMOND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 07-155-B-W |
| ) | |
| THE LANE CONSTRUCTION ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON MOTION TO REMAND TO STATE COURT

The Court denies Plaintiff's Motion to Remand to State Court, finding that the Defendant has demonstrated that the amount in controversy, including attorney's fees, meets the $75,000 jurisdictional threshold for diversity jurisdiction.

## I.  FACTS AND PROCEDURAL HISTORY

On September 19, 2007, Cindy Raymond filed a law suit in Maine Superior Court against The Lane Construction Corporation (Lane Construction), alleging a violation of the Maine Human Rights Act, 5 M.R.S.A. §§ 4551 *et seq.*, and the Maine Whistleblowers' Protection Act, 26 M.R.S.A. §§ 831 *et seq. Aff. of John W. McCarthy Ex. 1* (Docket # 2) (*Compl.*). The Complaint alleges that "[t]he amount in controversy in this dispute is $75,000.00." *Id.* ¶ 6. On October 4, 2007, Defendant Lane Construction petitioned for removal to this Court pursuant to 28 U.S.C. § 1441, claiming diversity of citizenship and an amount in controversy exceeding $75,000 under 28 U.S.C. § 1332. *Pet. for Removal* (Docket # 1). In its Petition for Removal, Lane Construction averred that "[t]he matter in controversy, as alleged by plaintiff, exceeds the value of $75,000, exclusive of interest and costs. . . . Attorney's fees can be part of the amount

in controversy when a statute, such as the Maine Human Rights Act, allows an award of fees . . . ." *Id.* ¶ 4.

In response, on October 9, 2007, Ms. Raymond moved to remand to state court, arguing that the amount in controversy did not exceed $75,000. *Mot. To Remand to State Ct.* at 1 (*Mot. to Remand*) (Docket # 6). She attached an affidavit signed by her attorney representing that she "is not seeking total damages in excess of $72,218.00," and "will stipulate that $72,218.00 (plus interest and costs) is the maximum award of damages which may be awarded to her in this case." *Mot. to Remand Ex. 1* ¶ 4 (*Ex. 1*). The affidavit further represents that the plaintiff had incurred $2782 in attorney's fees as of October 4, 2007, the date of removal. *Id.* ¶ 3.

While she is barred by Maine statute from demanding a dollar figure in the *ad damnum* clauses of her complaint under 14 M.R.S.A. § 52, Ms. Raymond did allege in the body of the Complaint that "the amount in controversy in this dispute is $75,000.00." *Compl.* ¶ 6. Further, in her reply memorandum, Ms. Raymond states that through her attorney's affidavit, she "is not seeking 'total damages' in excess of $75,000, inclusive of attorneys' fees incurred through the date of removal (but exclusive of interest and costs, which are not included in the jurisdictional amount)." *Pl.'s Reply Br. in Supp. of Mot. to Remand to State Ct.* at 4 (Docket # 8) (*Pl.'s Reply*) (footnote omitted). She defines "total damages" as "all damages – compensatory, punitive, back pay, and reinstatement and/or front pay." *Id.* at 4 n.1. Lane Construction opposes this motion. *Def.'s Objection to Pl.'s Mot. to Remand with Incorporated Mem. of Law* (Docket # 7) (*Def.'s Objection*).

**II.   DISCUSSION**

Ms. Raymond's motion neatly raises a narrow issue: Whether the potential award of future attorney's fees sustains a defendant's burden to demonstrate that the plaintiff's claim

exceeds the federal diversity jurisdiction threshold in a removal action. She has squarely framed the issue because if the Court includes any attorney's fees accrued after the date of removal in the amount in controversy, her damages will exceed the jurisdictional limit.[1]

### A. Jurisdictional Limits

Under 28 U.S.C. § 1332(a), Congress has provided that the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . Citizens of different States. . . ." 28 U.S.C. 1332(a). In questions of federal jurisdiction, "the party invoking the jurisdiction of the federal court carries the burden of proving its existence." *Coventry Sewage Assoc. v. Dworkin Realty Co.*, 71 F.3d 1, 4 (1st Cir. 1995) (quoting *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993)). Here, Lane Construction, as the party that removed the case to this Court, bears that burden.[2]

### B. Plaintiff's Self-Imposed Limitation of Damages

The first question is whether a plaintiff may avoid federal jurisdiction by limiting her claim for damages to less than the $75,000 threshold amount. Even if Ms. Raymond's claim could be worth more than $75,000, the United States Supreme Court has noted that a plaintiff is permitted to prevent a defendant from removing to federal court by "resort[ing] to the expedient of suing for less than the jurisdictional amount . . . though he would be justly entitled to more."

---

[1] To this point, Ms. Raymond has expressly limited her demand to $72,218.00, which, added to attorney's fees accrued by at the date of removal, equals $75,000.00. If fees accrued after the date of removal are included in the jurisdictional amount calculation, those fees will cause the matter to exceed the $75,000.00 jurisdictional limit.

[2] There is uncertainty regarding what standard the defendant bears in demonstrating the amount in controversy. Some courts have required that the defendant show "to a legal certainty" that the jurisdictional threshold has been met. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 400-01 (9th Cir. 1999) (describing the question). In the First Circuit, some district courts "have required the defendant to show by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional requirement." *Doughty v. Hyster New England, Inc.*, 344 F. Supp. 2d 217, 219 (D. Me. 2004) (citing *Evans v. Yum Brands, Inc.,* 326 F. Supp. 2d 214, 219-20 (D.N.H. 2004)). Here, the standard is not decisive, because if attorney's fees accrued after removal are included as a matter of law, the amount in controversy requirement will be satisfied. *See supra* note 1.

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938).  In the absence of First Circuit precedent, the Court is guided by *Satterfield v. F.W. Webb, Inc.*, in which the plaintiff maintained, from the beginning of the case, that her claim was worth less than $75,000 and had stipulated to that limit.  334 F. Supp. 2d 1, 1 (D. Me. 2004).  The Court adopts *Satterfield*: Ms. Raymond's status as a plaintiff establishes her as "'master of the claim,' and therefore [she] should have the power to limit her claim so it is not subject to federal subject matter jurisdiction."[3]  *Id.* at 5 (quoting *Gafford v. General Elec. Co.*, 997 F.2d 150, 157 (6th Cir. 1993)).

Lane Construction points out two equivocations in Ms. Raymond's attorney's affidavit.  First, the "stipulation" is not actually a stipulation, but only an offer to stipulate in the future, and second, she failed to include certain elements of damage.  *Def.'s Objection* at 5-6; *see supra* p. 2 (describing the stipulation).  Regardless, the Court accepts Ms. Raymond's attorney's stipulation that she is seeking no more than $75,000, including "compensatory, punitive, back pay, and reinstatement and/or front pay," and attorney's fees through the date of removal, but notes that this stipulation does not include attorney's fees incurred after the date of removal.  *Pl.'s Reply* at 4 n.1.

### C.     Whether Attorney's Fees May Satisfy the Jurisdictional Threshold

This outcome leads to the next question: Whether attorney's fees should be considered at all in determining whether the threshold amount has been satisfied.  The general rule is that "attorney's fees are excluded from the amount-in-controversy determination." *Spielman v. Genzyme Corp.*, 251 F.3d 1, 7 (1st Cir. 2001).  However, "[t]here are two exceptions to this rule: when the fees are provided for by contract, and when a statute mandates or allows payment of

---

[3] In *Satterfield*, Chief Judge Singal observed that the plaintiff "maintained throughout this case that her claim is worth less than $75,000," and had not changed her position after submitting the complaint. *Satterfield*, 334 F. Supp. 2d at 1.  Here, there is no evidence that, after filing suit, Ms. Raymond tailored her demand to escape federal jurisdiction.  *See Coventry Sewage Assoc.*, 71 F.3d at 5-6.

4

the fees." *Id.*; *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933); *Dep't of Recreation & Sports of Puerto Rico v. World Boxing Assoc.*, 942 F.2d 84, 89-90 (1st Cir. 1991); 14C Charles Allen Wright *et al., Federal Practice & Procedure* § 3725 (2007 Supp.) ("When attorneys' fees are provided for by state statute as an element of damages, courts also include them in calculating the jurisdictional amount."). Here, Ms. Raymond is proceeding under the Maine Human Rights Act, which provides that "the court, in its discretion, may allow the prevailing party . . . reasonable attorneys' fees and costs . . . ."[4]  5 M.R.S.A. § 4614. The Court concludes that attorney's fees are properly considered under the Maine Human Rights Act in determining whether the jurisdictional threshold has been met.

### D.    Whether Future Attorney's Fees Should Be Considered

The issue, thus winnowed, is whether future attorney's fees should be considered in determining whether the threshold limit has been met. The parties marshal separate lines of authority.

Citing the rule that the critical time for determining whether the jurisdictional amount has been met is the date of removal, Ms. Raymond argues that this rule, together with two Seventh Circuit cases, stands for the proposition that future attorney's fees should not be included when determining whether the jurisdictional amount has been met. *Mot. to Remand* at 2 (citing *Vradenburgh v. Wal-Mart Stores, Inc.*, 397 F. Supp. 2d 76, 77-78 (D. Me. 2005); *Hart v. Schering-Plough Corp.*, 253 F.3d 272 (7th Cir. 2001); and *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955 (7th Cir. 1998)).

---

[4] Some courts consider attorney's fees as an element of the matter in controversy only as long as they are not considered "costs" by the authorizing statute. *See Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 474 (1st Cir. 1979) (finding that a Puerto Rican statute providing for payment of attorney's fees did not classify the fees as "costs" for purposes of the federal jurisdiction threshold, but instead "should be added to the principal sum sued for in determining the amount in controversy."). Here, the Maine statute distinguishes between attorney's fees and costs. 5 M.R.S.A. § 4614.

Lane Construction counters that the First Circuit has "aligned itself with the Tenth Circuit, which holds that a reasonable estimate of fees likely to be recovered by the plaintiff if she prevails should be used in calculating the jurisdictional amount in a removal proceeding based upon diversity of citizenship."[5]  *Def.'s Objection* at 4 (citing *Dep't of Recreation*, 942 F.2d at 90; *Spielman*, 251 F.3d at 5-7, 10; and *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998)).  Ms. Raymond vociferously objects, claiming that Lane Construction mischaracterized the status of First Circuit case law, that the First Circuit comments are dicta, and that the Circuit has not decided this question.  *Pl.'s Reply* at 2-3.  She argues that this Court, as the district court did in *Great America Leasing Corp. v. Rohr-Tippe Motors, Inc.*, should acknowledge the split between the Seventh and Tenth Circuits, and should conclude the Seventh Circuit holding is more persuasive.  387 F. Supp. 2d 992 (N.D. Iowa 2005).

   1.    **The State of Law in the First Circuit**

If the First Circuit has ruled on an issue, this Court owes deference to that ruling; the first question, therefore, is whether the First Circuit has issued a definitive ruling.  *Eulitt v. Maine Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004); *Sarzen v. Gaughan*, 489 F.3d 1076, 1082 (1st Cir. 1973).

Relying on two cases, Lane Construction argues that the First Circuit has already decided that prospective attorney's fees should be included in the jurisdictional analysis.  First, Lane Construction highlights a *Department of Recreation* quote: "[A] reasonable estimate of [attorney's] fees may be included in determining whether the jurisdictional minimum is

---

[5] Lane Construction references other cases within the District where the prevailing parties in sexual harassment cases received substantial attorney's fee awards, awards that themselves exceeded $75,000.00. *Def.'s Objection* at 4-5 (citing *Quint v. A.E. Staley Mfg. Co.*, 245 F. Supp. 2d 162, 182 (D. Me. 2003); *Wilcox v. Stratton Lumber, Inc.*, 921 F. Supp. 837, 849 (D. Me. 1996) (awarding $93,450); *Nelson v. University of Maine System*, 944 F. Supp. 44 (D. Me. 1996) (awarding $94,000)).  Though accurately cited, these cases are unhelpful, because – as Ms. Raymond has framed the facts – any amount of future attorney's fees will crack the jurisdictional limit.

satisfied." *Def.'s Objection* at 4 (quoting *Dep't of Recreation*, 942 F.2d at 90). It further notes that the First Circuit in *Department of Recreation* is actually quoting a Seventh Circuit case, *Sarnoff v. American Home Products Corp.*, which contains language that supports the inclusion of future attorney's fees in determining whether the jurisdictional limit has been met.[6] 798 F.2d 1075, 1078 (7th Cir. 1986).

Lane Construction draws too broad a conclusion from *Department of Recreation.* The sentence preceding the citation to *Sarnoff* is: "In addition, while attorney's fees may, if authorized by law, constitute part of the amount in controversy, they may only do so to the extent *reasonable*." *Department of Recreation*, 942 F.2d at 90 (emphasis in original). By emphasizing the word "reasonable," the First Circuit supported its point that only a reasonable estimate of attorney's fees may be included. *Sarnoff*, 798 F.2d at 1078. The Court concludes that *Department of Recreation* neither holds that future attorney's fees should be included in determining the jurisdictional limit nor suggests what the First Circuit would do if presented with the issue.

Second, while recognizing that *Spielman* "does not address whether courts should consider only the amount of attorney's fees incurred prior to removal, or the likely amount of fees that would be awarded to the plaintiff if she prevailed," Lane Construction contends that *Spielman* "implies that the relevant inquiry is the amount of fees likely to be awarded if the plaintiff prevailed." *Def.'s Objection* at 3 (citing *Spielman*, 251 F.3d at 5-7). Lane Construction's argument continues:

---

[6] *Sarnoff* is not exactly a ringing endorsement: "If Fletcher had won (and if the attorney's fee statute is applicable in a case of this sort), he too might have been entitled to a reasonable attorney's fee, and maybe it would have been large enough to carry him over the $10,000 hump." *Sarnoff*, 798 F.2d at 1078 (emphasis added). Nevertheless, Lane Construction's main point about *Sarnoff* is correct: *Sarnoff* is some authority for the proposition that future attorney's fees may be included in determining whether the threshold limit has been met. Of course, the Seventh Circuit is the same circuit which later decided *Gardynski-Leschuck* and *Hart*, discussed below.

> Specifically, the First Circuit frames the issue in *Spielman* as whether the plaintiff's damages allegation "encompasses not only the fees <u>anticipated</u> for his individual case, but also the fees that <u>will be generated</u> on behalf of other members of the class," and likewise whether "for jurisdictional purposes, to aggregate the attorney's fees that he <u>anticipates will be needed</u> to press the claim of the entire class." If the Court thought the relevant inquiry was the amount of fees already incurred when the case was filed, the Court would not have referred to "anticipated" fees or fees that "will be generated" in the future.

*Def.'s Objection* at 3 (citations omitted; emphasis in Defendant's memorandum) (quoting *Spielman*, 251 F.3d at 5, 7).

Lane Construction reads too much into *Spielman*. The language Lane Construction quotes is merely the First Circuit's description of the plaintiff's argument. *Spielman* addressed whether a plaintiff could aggregate attorney's fees from individual class members to satisfy the jurisdictional threshold and rejected "Spielman's argument that [the Massachusetts statute's] authorization of attorney's fees requires that such fees be aggregated to the named plaintiff for purposes of determining federal jurisdiction." *Spielman*, 251 F.3d at 10. *Spielman* did not decide whether future fees should be included in assessing whether the jurisdictional threshold has been met. The Court concludes that the First Circuit has not issued a definitive decision on this issue and has not suggested what it would rule if presented with the issue.

Several recent cases in the District of Maine have included future attorney's fees in determining whether the amount in controversy exceeds the jurisdictional limit. Chief Judge Singal included future attorney's fees in two cases. *See Waldron v. George Weston Bakeries Distrib., Inc.*, 477 F. Supp. 2d 295, 296-97 (D. Me. 2007) (noting that plaintiffs did not dispute the defendant's proffers of future fees); *Finley v. George Weston Bakeries Distrib., Inc.*, 473 F. Supp. 2d 105, 108 (D. Me. 2007) (considering attorney's fees even though they may not have been necessary to meet the jurisdictional threshold and observing that while defendants provided specific proffers for each of the two plaintiffs, the plaintiffs themselves did not respond). In

8

addition, in *Business Lenders, LLC v. Gazak*, Magistrate Judge Kravchuk found that a contractual right to attorney's fees satisfied the jurisdictional threshold even though the *pro se* defendants failed to raise attorney fees as a means of fulfilling the jurisdictional requirements. No. 05-50-B-C, 2005 U.S. Dist. LEXIS 11067, at *5-6 (D. Me. June 6, 2005). Although these cases suggest that it is proper to consider future attorney's fees in assessing jurisdictional requirements, these cases do not directly address the split between the Seventh and Tenth Circuits as explicitly raised by the parties in this case.

### 2. Whether Future Attorney's Fees Are Includable in Determining Whether the Jurisdictional Limit Has Been Met

This leads finally to the nub of the dispute: Whether the Court should consider future attorney's fees in determining whether the jurisdictional limit has been met. There are two lines of authority. Emanating from the Tenth Circuit is the view that future attorney's fees, when authorized, should be considered, and from the Seventh Circuit, the view they should not.

In *Miera*, the Tenth Circuit addressed a claim in which the underlying damages, including attorney's fees as of the date of removal, equaled "$47,882.51, $2,117.50 short of the $50,000 jurisdictional threshold." 143 F.3d at 1340. The court in *Miera* found that it was not "unreasonable to expect plaintiff to incur an additional $2,117.50 in attorney's fees," and included these future fees in the amount in controversy analysis. *Id.* In doing so, it relied on a 1933 United States Supreme Court case, *Missouri State Life Ins. Co. v. Jones*, which, according to the Tenth Circuit, stands for the proposition "that when a statute permits recovery of attorney's fees a reasonable estimate may be used in calculating the necessary jurisdictional amount in a removal proceeding based upon diversity of citizenship." *Miera*, 143 F.3d at 1340 (citing *Missouri State Life Ins. v. Jones*, 290 U.S. 199, 202 (1933)).

*Missouri State* is an unusual case. It began in state court, was removed to federal court, and was remanded to state court, where it was tried to completion. *Missouri State*, 290 U.S. at 201. It was then affirmed on appeal by the state supreme court, and found its way to the United States Supreme Court. *Id*. The Supreme Court reversed, concluding that the case had been properly removed. *Id.* at 202. There were two issues. The primary issue was whether a state statutory description of the right to attorney's fees as costs precluded their consideration as part of the "matter in controversy" for purposes of federal jurisdiction; the Supreme Court concluded it did not. *Id.*

The second issue was whether attorney's fees were properly included in assessing the threshold amount. Under the statute then in effect, the "matter in controversy" for diversity jurisdiction had to exceed "exclusive of interest and costs, the sum of value of $3,000." *Id.* at 200. The plaintiff, who was suing under insurance policies, demanded damages of $3,000, one dollar less than the jurisdictional amount, plus attorney's fees. When the insurer removed the case, it "alleged a reasonable attorney's fee would amount to $250 and that the matter in controversy exceeded $3,000, exclusive of interest and costs." *Id.* at 201. After removal was denied and the case was tried in state court, the plaintiff received judgment for $3,000 and attorney's fees of $550. *Id.* Having concluded that the attorney's fees should have been included as part of the "matter in controversy," the Supreme Court determined that the case should not have been remanded, since the demand plus the attorney's fees exceeded $3,000. *Id.*

It may be that *Missouri State* stands for the proposition that a court may make a reasonable estimate of future fees, but, if so, this holding is not explicit. The opinion does not clarify whether the $250 in attorney's fees were for past or future services. Hence, *Missouri*

*State*, which is cryptic, seems equivocal authority upon which to base a holding nearly seventy-five years later.

The Seventh Circuit, in *Gardynski-Leschuck*, by contrast, was confronted with an egregious set of facts.[7] Other than attorney's fees, the plaintiff asserted damages of only $22,011.99; she then claimed $28,020.00 in future attorney fees, cresting the $50,000.00 threshold by a grand total of $31.99. *Id.* at 957. The court was understandably skeptical about whether the attorney's fee estimate met the *St. Paul* legal certainty standard and logically concluded it did not. *Id.* The Seventh Circuit went further, however, and rejected the consideration of any attorney's fees after the date of removal. *Id.* at 958 (determining that "the value of legal services that have not been and may never be incurred . . . are therefore not 'in controversy' between the parties").

To the extent the Seventh Circuit held that a court may not consider any estimate, however reasonable, of future attorney's fees, this Court disagrees. To meet the jurisdictional threshold, courts routinely consider future damages, such as pain and suffering, medical bills, and lost wages.[8] A rule that treats attorney's fees differently from any other category of damage for purposes of ascertaining the amount of the "matter in controversy" draws no support from the language of the statute. A transparent attempt to puff up future attorney's fees to cross the jurisdictional threshold should bear special scrutiny under *St. Paul*. Nevertheless, the Court declines to eliminate any consideration of a patently reasonable estimate of future attorney's fees

---

[7] Ms. Raymond buttresses the analysis in *Gardynski-Leschuck* with citation to a second Seventh Circuit case, *Hart v. Schering-Plough Corp.*, 253 F.3d 272 (7th Cir. 2001). The court in *Hart* relies upon *Gardinski-Leschuck*, but does not provide additional analysis for the purposes of this Order.

[8] The Seventh Circuit distinguishes future lost wages from attorney's fees by stating that "[u]nlike future income lost to injury, legal fees are avoidable." *Gardynski-Leschuck*, 142 F.3d at 958. But plaintiffs often mitigate their future wage loss by returning to work and, in any event, if valid, this distinction is not supported by the language of the statute.

11

simply because they are attorney's fees and not another component of monetary relief, such as future special damages or pain and suffering.

In direct contrast with the plaintiff in *Gardynski-Leschuck*, Ms. Raymond has drawn her request too close to the jurisdictional line. She has stipulated that her claim, absent attorney's fees, will be no greater than $74,218, and that with attorney's fees to the very date of removal of $2,782, the matter in controversy totals precisely $75,000. Given that even one extra dollar of attorney's fees would place her over the $75,000 threshold, it is a "legal certainty" that her amount in controversy will meet the statutory requirement. The Seventh Circuit's concern about the speculative nature of future attorney's fees is not a concern here. In short, under *St. Paul*, there was a legal certainty that at the date of removal, Ms. Raymond's claim, including attorney's fees, would exceed $75,000 and, therefore, her motion to remand must be denied.

### III. CONCLUSION

The Court DENIES Plaintiff's Motion to Remand to State Court (Docket # 6).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of December, 2007